**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SOVEREIGN TECHNOLOGY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COXCOM, LLC, and COX COMMUNICATIONS KANSAS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-26-00296-PRW |

# ORDER

Before the Court are Defendants' Joint Motion to Dismiss (Dkt. 11) the Verified Petition (Dkt. 1-2), and Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. 14). Upon review, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion. Plaintiff's Motion for Leave to File First Amended Complaint is **DENIED WITHOUT PREJUDICE TO RENEWAL**.

## *Background*

This case arises from an alleged contractual dispute. Plaintiff, an owner and/or operator of apartment complexes in Oklahoma and Kansas, alleges that the parties entered into over 60 "Bulk Service Agreements" under which Plaintiff purchased internet services from Defendants for use by its tenants. Plaintiff alleges that it agreed to pay $33.02 per unit per month, subject to a first-year ramp-up under which the number of units billed would gradually increase for each property. Defendants agreed to, among other things, (1) "install, maintain, and repair infrastructure extending" from Defendants' public facilities to each property and any "Customer Premises Equipment"; (2) provide marketing materials and

training to Plaintiff's staff; and (3) pay Plaintiff six percent of the cost of "any additional services beyond internet that its tenants may purchase through Cox."[1]

Plaintiff expected to profit from the agreements by charging its tenants around $75.00 per month—higher than $33.02 per month, but still below the rates Defendants were charging individual consumers for their services at the time. Plaintiff also expected to attract new tenants by using the marketing materials provided by Defendants to advertise the comparatively cheap internet services available at its apartment complexes.[2] Tenants would be enrolled "upon the execution or renewal of their respective leases, appreciating that most, if not all, [current] tenants were already subject to internet service contracts."[3]

Plaintiff alleges that Defendants breached these agreements in several ways. Plaintiff also asserts claims for tortious interference, fraudulent inducement, and negligent misrepresentation. After Plaintiff filed its Verified Petition (Dkt. 1-2) in state court, Defendants removed the case to federal court and promptly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[4]

***Legal Standard***

[1] Pet. (Dkt. 1-2), at ¶¶ 6–15. For purposes of this Motion, the Court collectively refers to Defendants where the Petition does so. Any amended complaint must specifically identify which Cox entity is a party to each agreement at issue.

[2] *Id.*

[3] *Id.* at ¶ 13.

[4] Notice of Removal (Dkt. 1).

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[5] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[6] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[7] While factual allegations are taken as true, a court need not accept mere legal conclusions.[8] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[9]

## ***Discussion***

### I. Plaintiff has adequately pleaded damages

Defendants argue that Plaintiff has failed to adequately allege damages for each claim. A plaintiff must allege that they suffered losses in connection with the defendants' conduct.[10] The Petition alleges four causes of action, each of which requires proving damages as a necessary element. Although the concluding damages allegations are general, they must be considered together with the incorporated factual allegations. Plaintiff alleges

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[6] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

[7] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

[8] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[9] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

[10] *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (plaintiff did not adequately plead damages where the damages alleged were "[un]connected to" the defendants' conduct).

unpaid commissions on additional services purchased by tenants and lost revenue resulting from tenants' termination of, or refusal to enroll in, the bulk-services program.[11] Those allegations identify concrete categories of economic injury allegedly resulting from Defendants' conduct.

Defendants argue that lost profits are a form of "special damages," which must be specifically pleaded, and that Plaintiff has failed to do so. Special damages are those damages that "depend on particular circumstances," while general damages "are the ordinary result of the conduct alleged."[12] The parties analyze the claims under Oklahoma law, and the Court does likewise for purposes of this Motion. Under Oklahoma law, "lost profits from a collateral contractual relationship may be recovered in a breach of contract action if such damages can be said to have been within the contemplation of the parties at the time of contracting."[13] Thus, even if Plaintiff's lost profits depend on a separate agreement with a nonparty (namely Plaintiff's tenants or prospective tenants), those special damages may be recoverable in a breach of contract action. The question here is whether the Petition specifically identifies the claimed lost profits sufficiently to satisfy Rule 9(g).

[11] Pet. (Dkt. 1-2), at ¶¶ 16, 25, 30.

[12] *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1266 (10th Cir. 2007).

[13] *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.,* 1997 OK 7, ¶ 32, 933 P.2d 282, 293.

Fed. R. Civ. P. 9(g) provides that if an item of special damages is claimed, it must be "specifically stated." Defendants contend that the Petition neither specifically requests lost profits nor sufficiently identifies the losses underlying such a request. But the Petition includes allegations that the alleged breaches caused tenants to "complain and lose confidence in Plaintiff," that Defendants attempted to "get the tenants to sign up directly with [them] rather than through Plaintiff," that tenants "terminate[d] their arrangement for the bulk internet services or refuse[d] to sign up altogether," and that Defendants "notified each of Plaintiff's tenants…that their service would be switched to going directly through [them]."[14] Those specific allegations, when combined with a more general request for damages, adequately put Defendants on notice of the "nature" of the special damages sought. The Court is satisfied that Plaintiff has adequately pleaded its request for damages for lost profits.

## II. Sufficiency of Plaintiff's claims

### A. The breach of contract claim

To plead a breach of contract claim under Oklahoma law, a plaintiff must adequately allege "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."[15] Plaintiff has alleged that the parties entered into over 60 "Bulk

---

[14] Pet. (Dkt. 1-2), at ¶¶ 16(e), 17, 22, 30.

[15] *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

Service Agreements" encompassing bulk internet services for over 60 apartment complexes.[16]

Plaintiff first alleges that Defendants "failed to provide Plaintiff with access and training for the 24-hour 'My Billing' portal."[17] But the Petition does not link that alleged breach to any contract term. It may be that Defendants breached their contractual obligation to "provide marketing materials and *training* to Plaintiff's staff,"[18] but there is no allegation regarding what kind of training was encompassed by the agreements or whether it includes any training with regard to the billing portal.

While Plaintiff did not attach the agreements to the Petition, the absence of attached agreements is not itself grounds for dismissal. Plaintiff has identified several contractual obligations in paragraph 14 and alleges corresponding failures in paragraphs 16, 23, and 25. Read together, paragraphs 14(a) and 23 allege that Defendants undertook to provide bulk internet services but provided none to more than ten properties. Paragraphs 14(f) and 25(f) likewise allege an obligation to pay commissions on additional services and nonpayment of commissions on services tenants purchased. Although these allegations lack transactional detail, they identify the asserted obligations and the alleged

---

[16] Pet. (Dkt. 1-2), at ¶ 12.

[17] *Id.* at ¶ 25(a).

[18] *Id.* at ¶ 14(d) (emphasis added).

nonperformance. The Court therefore declines to dismiss the breach-of-contract claim in its entirety.

The Petition also alleges that Defendants "failed to rewire over 10 of the apartment complexes."[19] This might be a breach of Defendants' obligation to provide bulk internet services to each residential unit at the properties,[20] but Defendants are left in the dark about which complexes they failed to rewire, whether any of these complexes needed to be rewired, or whether the contracts obligated Defendants to rewire them.

Plaintiff also alleges that Defendants failed to "timely install modems" and "timely provide bulk equipment" for vacant units.[21] Again, no operative contract provision is identified, aside from Defendants' obligation to "install…infrastructure."[22] Paragraph 14(b) alleges obligations concerning both infrastructure and customer-premises equipment. But the Court is left guessing whether modem installation and delivery of bulk equipment plausibly fall within that pleaded undertaking. And to the extent the asserted breach concerns delay rather than complete nonperformance, the Petition provides little detail concerning the duration or circumstances of that delay.

---

[19] *Id.* at ¶ 25(b).

[20] *Id.* at ¶ 14(a).

[21] *Id.* at ¶ 25(c).

[22] *Id.* at ¶ 14(b).

Likewise, the allegation that Defendants failed to "deliver advertising materials to Plaintiff for distribution in a timely manner"[23] gives no indication what advertising materials or additional services are at issue and when these materials or services had to be provided or paid for under the agreements. And while an express performance date is not necessarily required because Oklahoma law may supply a reasonable time for performance,[24] the pleading must nevertheless provide enough context to make the alleged delay plausibly unreasonable. The Petition fails to do so here.

There is also an allegation that Defendants' internet services and support were too slow.[25] But again, no operative provision is identified, and although we can glean from the Petition that Defendants were under a general obligation to provide internet services and some level of customer support,[26] there is no allegation that Defendants had any obligation to provide these services at a certain speed or quality, nor any explanation of how the services and support provided by Defendants fell below any such standard.

Finally, Plaintiff alleges that Defendants "breached the implied covenant of good faith and fair dealing by advertising and offering Plaintiff's tenants lower cost internet services immediately after entering into the Bulk Services Agreements."[27] Oklahoma law

---

[23] *Id.* at ¶ 25(d).

[24] 15 O.S. § 173.

[25] Pet. (Dkt. 1-2), at ¶ 25(e).

[26] *Id.* at ¶¶ 10–11, 14(a).

[27] *Id.* at ¶ 26.

imposes an implied covenant on all contracting parties, such that "neither party, because of the purposes of the contract, will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship."[28] Plaintiff's lack of an express exclusivity provision does not alone resolve its implied-covenant theory. The Court must consider whether the alleged targeted solicitation impaired a benefit reasonably arising from the parties' contractual arrangement, rather than merely reducing the arrangement's profitability through ordinary competition.

Plaintiff alleges both that Defendants suggested a resale price and that, after tenants enrolled, Defendants targeted those tenants with lower-priced direct offers. The question is whether the pleaded arrangement supports a reasonable contractual expectation against that targeted diversion, rather than an expectation that market prices would remain unchanged.[29] Plaintiff alleges no express or implied restriction on Defendants' ability to market its services at low cost to Plaintiff's tenants arising out of the agreements nor that Plaintiff had any exclusive rights to market internet services to its tenants. Nor does Plaintiff explain what contract provisions support any expectation that Defendants would refrain from marketing to Plaintiff's tenants directly, at any cost, merely because the parties had entered into agreements regarding the provision of bulk internet services, nor any

[28] *First. Nat. Bank & Trust Co. of Vinita & Kissee*, 1993 OK 96, ¶ 24, 859 P.2d 502, 509.

[29] Pet. (Dkt. 1-2), at ¶¶ 9, 15.

allegation that the alleged targeted diversion impaired a reasonably expected benefit of the resale agreement. Therefore, the Petition fails to state a claim for breach of contract on an implied covenant theory.[30]

**B. The tortious interference claim**

Plaintiff's claim of tortious interference also fails. To state a claim for tortious interference with contract or business relations in Oklahoma, a plaintiff must allege (1) "[t]hat he or she had a business or contractual right that was interfered with"; (2) "[t]hat the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable"; and (3) damages.[31] The malicious and wrongful conduct must have been done intentionally and in bad faith.[32] Likewise, for tortious interference with prospective economic advantage, a plaintiff must allege that the interference was both wrongful and done in bad faith.[33]

Plaintiff has alleged that Defendants interfered with its contractual rights by notifying Plaintiff's tenants that their services would be provided by Defendants directly,

---

[30] Defendants also argue that Plaintiff failed to plead its own performance or an excuse for nonperformance. Paragraph 20 of the Petition alleges that Defendants issued a notice asserting approximately $800,000 in unpaid invoices, but it does not unequivocally admit that the asserted default was valid and unexcused. The Petition also alleges prior nonperformance by Defendants. The Court does not resolve the validity of the asserted default or the parties' respective excuses for nonperformance on this record.

[31] *Mac Adjustment, Inc. v. Prop. Loss Rsch. Bureau*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428.

[32] *Loven v. Church Mutual Ins. Co.*, 2019 OK 68, ¶ 19, 452 P.3d 418, 425.

[33] *Id.* at ¶ 24.

and that Defendants interfered with Plaintiff's prospective business relationships with potential tenants by advertising internet services at lower rates than those available from Plaintiff via the bulk services program.[34]

Plaintiff has failed to plausibly allege, however, that this alleged interference was malicious and wrongful. The Petition alleges an intent to divert tenants to Defendants' direct services. The more substantial question is whether it pleads facts making that diversion wrongful and in bad faith, rather than ordinary competition. Describing prices as "artificially low" and conduct as "malicious" does not, without sufficient supporting context, answer that question. The Petition lacks supporting factual allegations that would transform these conclusory allegations into plausible claims of tortious interference.

**C. The fraudulent inducement claim**

In Oklahoma, "a claim for fraudulent inducement must allege all the elements of common law fraud."[35] Those are "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied

[34] Defendants' participation in the Bulk Service Agreements does not, standing alone, establish that they were parties to Plaintiff's separate arrangements or business relationships with its tenants. The Court therefore does not dismiss this claim merely because Defendants were parties to the upstream service agreements. The Court merely assumes a sufficiently distinct third-party relationship for purposes of the remaining analysis.

[35] *Oak Tree Partners, LLC v. Williams*, 2020 OK CIV APP 5, ¶ 87, 458 P.3d 626, 646.

on by the other party to his (or her) own detriment."[36] Also, the plaintiff's reliance on the false representation must have been justifiable.[37]

Plaintiff's fraudulent inducement claim is predicated on similar facts to its breach of contract claim, but with an added wrinkle. Plaintiff alleges that Defendants made false "representations" during the course of negotiating the Bulk Service Agreements "to induce Plaintiff to enter into the [agreements]."[38] For instance, Defendants "represented that [Plaintiff's] tenants would not be required to deal directly with [them] for service or billing issues," which Defendants knew was material to Plaintiff due to their "poor reputation with tenants in the relevant markets."[39] Defendants also "supplied false information regarding internet market rates and pricing."[40] In particular, Defendants "represented that the market rate for internet services was more than $100.00 per month and that Plaintiff would be able to charge its tenants $75.00 per month."[41] Plaintiff also alleges that Defendants concealed an existing intention to market directly to its tenants at lower prices. That allegation is distinct from the contention that historical market-rate statements were false. A

---

[36] *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218.

[37] *State ex rel. Sw. Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 19, 519 P.2d 491, 495.

[38] Pet. (Dkt. 1-2), at ¶ 43.

[39] *Id.*

[40] *Id.* at ¶ 51.

[41] *Id.* at ¶ 41.

concealment theory requires consideration of the allegedly withheld fact, the circumstances creating a duty to disclose it, and the alleged reliance and resulting injury.

First, Defendants argue that any fraudulent inducement claim based on the alleged misrepresentation regarding the handling of the tenants' service and billing issues is duplicative of Plaintiff's breach of contract claim and therefore must be dismissed. Under Oklahoma law, "to assert simultaneously a claim for fraud and a claim for breach of contract, the claims must be distinct."[42] Plaintiff does allege a breach of the agreements based on "consistently slow" service and support,[43] but here, the alleged misrepresentation is about *who* would handle the billing and service issues, not the quality or speed of Defendants' customer support. The alleged precontractual representation concerning who would handle tenant communications is not identical to the pleaded failure to provide timely service and support. Because the fraud claim fails on other grounds, however, the Court need not determine whether Plaintiff has sufficiently distinguished both the factual and damages bases of the two claims.

Paragraph 43 of the Petition alleges that Defendants made the promised service-and-billing arrangements while intending not to perform them. The Court therefore evaluates this theory as one of promissory fraud. Although intent may be alleged generally,

---

[42] *Brown v. Elephant Talk Commc'ns Corp.*, No. CIV-18-902, 2020 WL 7220793, at *8 (W.D. Okla. Dec. 7, 2020) (citing *Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009)).

[43] Pet. (Dkt. 1-2), at ¶ 25(e).

the Petition must still supply a factual context making the alleged deception plausible. The pertinent deficiency is not the complete absence of an allegation of contemporaneous fraudulent intent, but the lack of supporting circumstances and particularized communications. Here, it is unclear from the Petition whether Defendants simply reneged on the representation completely, or whether they provided some level of support that was ultimately unsatisfactory, and how. The Petition likewise fails to include allegations plausibly showing a duty to disclose or reliance on the misrepresentation or omission.

The fraudulent inducement claim based on Defendants' alleged misrepresentations of market rates and pricing also fails for largely the same reasons. Although Plaintiff labels the pricing information false, it does not identify facts explaining what was inaccurate about Defendants' statements concerning prices at the time they were made. Nor are there facts to support the allegation that Defendants intended to deceive Plaintiff about the current market rates and pricing. Defendants' subsequent advertisements of lower prices do not, standing alone, establish that their statements about then-existing prices were false when made. The Petition fails to state a claim for fraudulent inducement.[44]

**D. The negligent misrepresentation claim**

---

[44] Fed. R. Civ. P. 9(b) applies to Plaintiff's fraudulent-inducement claim. The parties dispute whether the Petition satisfies its particularity requirement. Because the claim fails for the reasons stated above, the Court need not decide whether every alleged misrepresentation independently satisfies that requirement.

Under Oklahoma law, the elements of a claim for negligent misrepresentation are (a) "a misrepresentation or omission of material fact"; (b) "that [the defendant] failed to exercise the reasonable care required"; (c) "that the plaintiff reasonably relied on the [defendant's] misrepresentation or omission"; and (d) damages.[45] Plaintiff's negligent misrepresentation claim rests on the same facts as the fraudulent inducement claim pertaining to Defendants' alleged misrepresentations about market rates and prices, except that Plaintiff here includes a conclusory allegation that Defendants "failed to exercise reasonable care in obtaining or communicating this information to Plaintiff."[46]

In short, Plaintiff alleges that Defendants supplied false pricing information and failed to exercise reasonable care in obtaining or communicating it. The Petition does not, however, identify what was inaccurate about the historical pricing information or provide a factual basis for concluding that it was carelessly obtained or communicated. The allegation that Defendants later offered lower prices does not alone establish either proposition. The Petition therefore fails to plausibly allege that Defendants communicated inaccurate historical pricing information or failed to exercise reasonable care in obtaining or communicating that information.[47]

---

[45] *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 991 (10th Cir. 1994).

[46] Pet. (Dkt. 1-2), at ¶ 52.

[47] The parties dispute whether a heightened pleading standard applies to the negligent misrepresentation claim under Federal Rule of Civil Procedure 9(b). The Court holds that Plaintiff's negligent-misrepresentation claim fails under either standard.

### III. Plaintiff's motion for leave to file an amended complaint

Plaintiff has also moved for leave from the Court under Federal Rule of Civil Procedure 15(a)(2) to file an amended complaint in the event its Petition is dismissed for failure to state a claim.[48] Under Local Civil Rule 15.1, "a party moving under Fed. R. Civ. P. 15(a)(2) to amend a pleading…must attach the proposed pleading as an exhibit to the motion." The motion must also state whether any party objects to the motion. Plaintiff did not attach any proposed pleading as an exhibit to its Motion, and the Motion does not state whether any party objects to it. Therefore, Plaintiff's Motion for Leave to Amend (Dkt. 14) fails to comply with the Local Rules.

***Conclusion***

For these reasons, Defendants' Joint Motion to Dismiss (Dkt. 11) is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's breach of contract claim survives in part, but the remaining claims are **DISMISSED WITHOUT PREJUDICE**. Additionally, Plaintiff's Motion for Leave to Amend (Dkt. 14) is **DENIED WITHOUT PREJUDICE**. The denial rests on procedural deficiencies, not on a determination that amendment would necessarily be futile. Plaintiff may thus file a compliant motion for leave to amend within 21 days of the date of this order.

**IT IS SO ORDERED** this 29th day of September 2026.

---

[48] Mot. for Leave (Dkt. 14).

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE